# Taylor, Appellant, *v.* Hoag et al.

*Trusts and trustees—Charitable use—Promotion of changes in government for public welfare—Constitutional changes—"Charitable"—Words and phrases—Deed.*

1. The word "charitable," in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint.

2. Where there is nothing inherently unlawful either in the object to be attained or the means to be adopted to accomplish that object, the courts will sustain the trust, without regard to the wisdom of the object proposed.

3. Such a trust is not defeated because the successful attainment of the objects contemplated, might involve changes in the Constitution and existing laws.

4. A trust created for the purpose of promoting improvements in the structure and methods of government, with special reference to the initiative, referendum and recall, etc., the revision of state and federal constitutions, to provide for the dissemination of knowledge on such subjects and to "draft bills and acts, laws and other legislation and to use all lawful means to have them introduced and passed to the end that popular democratic and efficient government may be promoted in the United States of America," is a lawful trust for charitable uses.

Mr. Justice SCHAFFER dissented.

Argued January 18, 1922. Appeal, No. 221, Jan. T., 1922, by plaintiff, from decree of C. P. No. 4, Phila. Co., Dec. T., 1920, No. 2234, dismissing bill in equity, in case of Amelia M. Taylor in her own right and as executrix of the will of Charles Freemont Taylor, deceased, *v.* Clarence G. Hoag, Thomas Raeburn White, Samuel S. Fels and Emma V. Jones, trustees. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill to declare void certain trusts created by deed. Before FINLETTER, J.

The opinion of the Supreme Court states the facts.
Bill dismissed.   Plaintiff appealed.

*Error assigned,* inter alia, above decree, quoting it.

*Theodore F. Jenkins,* with him *John T. Murphy, Jr.,* and *John T. Murphy,* for appellant.—A perpetual trust to obtain changes in the law so as to secure the initiative, referendum and recall and the revision of city charters, state constitutions and our national constitution, is invalid: Jackson v. Phillips, 14 Allen (Mass.) 539; Centennial, etc., Assn., 235 Pa. 206; George v. Braddock, 45 N. J. Eq. 757.

*H. Gordon McCouch,* for appellees.—The trust created is for a charitable use: Centennial, etc., Assn., 235 Pa. 206; Toner's Est., 260 Pa. 49; Russell v. Allen, 107 U. S. 163; Kimberly's Est., 249 Pa. 469; Civic Club of Harrisburg v. Trust Co., 44 Pa. C. C. R. 401; Manners v. Library Co., 93 Pa. 165.

OPINION BY MR. JUSTICE FRAZER, March 6, 1922:

Doctor Charles F. Taylor assigned to himself and three others the bulk of his personal property, amounting to more than $150,000, also the assets of a magazine known as the "Medical World," in trust to apply the net income, inter alia, "to promote improvements in the structure and the methods of government, with a special reference to the initiative, referendum, and recall; proportional representation; preferential voting; ballot reform; the simplification of municipal, state and national government, and the revision or remaking of city charters, state constitutions and our national constitution, with a view to promote efficiency and popular control of government," and providing further that the trustees should have "full power and authority to employ and pay lecturers and writers and such other assistants and employees as they may deem necessary for prop-

erly carrying out the purposes of the trust; to print, publish and distribute pamphlets, magazines and newspapers; and generally to use any and all lawful means to increase the knowledge of the citizens of the United States of America upon these governmental and political questions; and shall further draft bills and acts, laws and other legislation and use all lawful means to have them introduced and passed to the end that popular democratic and efficient government may be promoted in the United States of America." The trustees took possession of the property during the donor's lifetime, who, at his death, left a will giving his residuary estate to his wife and appointing her coexecutrix. The deed also contained a clause providing for the modification, cancellation or rescinding of the trust at any time, by agreement between the grantor and trustees, authorized by a vote of the majority exclusive of the grantor; the widow, as executrix, requested the trustees to revoke the trust and, on their refusal to do so, filed the present bill asking that the trust be declared void and that the trustees be ordered to account and deliver to her the entire trust property. The court below found the trust to be valid and dismissed the bill and plaintiff appealed. The sole question for consideration is whether the purposes mentioned in the deed of trust constitute a charitable use. If so, the trust is valid, otherwise it is void as violating the rule against perpetuities.

The principal contention of appellant is that since the purpose of the trust was to secure radical changes in our system of government it is, accordingly, contrary to law and cannot be sustained. The word "charitable," in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood "to refer to something done or given for the benefit of our fellows or the public": Knight's Est., 159

Pa. 500, 502. "The attempt to formulate a definition that is so specific as to cover every public charity, is sure to prove a failure. Charitable uses take such varied forms that a specific enumeration of the classes or objects is necessarily defective. The scope of a charitable use is well defined in Perry on Trusts, cited in Ould v. Washington Hospital, 95 U. S. 303, 'A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well doing and well being of social man.' In Episcopal Academy v. Phila., 150 Pa. 565, this court said, 'Whatever is gratuitously done or given, in relief of the public burdens or advancement of the public good, is a public charity. In every such case as the public is the beneficiary, the charity is a public charity.' In Fire Ins. Patrol v. Boyd, 120 Pa. 624, we said, 'A charity in a legal sense may be more fully defined as a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government": Centennial and Memorial Association of Valley Forge, 235 Pa. 206, 210. See also Barnwell's Est., 269 Pa. 443.

Viewed in the light of the foregoing definitions the trust under consideration must be held to be for the benefit and welfare of the public in that its object is to promote improvements in the structure and methods of government, with a view to efficiency and popular contact and to use all lawful means to increase the knowledge of citizens on governmental and political questions.

Must it be held void because the successful attainment of these objects would involve a change in existing laws? We would hesitate to subscribe to such doctrine unless reason or authority compelled us to do

so. Appellant relies upon Jackson v. Phillips, 14 Allen
(Mass.) 539, where it was held that a trust to secure
the passage of laws granting women the right to vote,
hold office and deal with their property on an equal-
ity with men, could not be maintained because the
accomplishment of its object required changing the Con-
stitution. At the same time, however, the court upheld
another trust in the same will seeking the abolition of
slavery and the reform of the fugitive slave law, both
objects being recognized institutions at that time and in-
volving questions of such serious controversy as to re-
quire not only a constitutional amendment but a Civil
War to settle them. The court said (page 555) : "In a
free republic, it is the right of every citizen to strive in
a peaceable manner by vote, speech or writing, to cause
the laws, or even the Constitution, under which he lives,
to be reformed or altered by the legislature or the people.
But it is the duty of the judicial department to expound
and administer the laws as they exist. And trusts whose
express purpose is to bring about changes in the laws
or political institutions of the country are not charitable
in such a sense as to be entitled to peculiar favor, pro-
tection and perpetuation from the ministers of those
laws, which they are designed to modify or subvert."
The court justified its action in upholding one trust and
declaring the other invalid by saying (page 565) : "The
manner stated of putting an end to slavery is not by
legislation or political action, but by creating a public
sentiment which rather points to moral influence and
voluntary manumission. The means specified are the
usual means of public instruction by books and news-
papers, speeches and lectures......The just inference
is that lawful means only are to be selected and that they
are to be used in a lawful manner."

We find it difficult to reconcile the opposite conclu-
sions reached by the Massachusetts court with respect to
the different objects of the trust, since both contemplated
a change in existing laws and, consequently, to that ex-

tent were contrary to law, but neither proposed to effect a change in other than a lawful manner. In Garrison v. Little, 75 Ill. App. 402, a trust to provide funds to aid in securing to women of the United States the right to vote was held not to be a violation of public policy and was sustained as a charity and in George v. Braddock, 45 N. J. Eq. 757, a trust for "spreading the light on social and political liberty and justice in these United States of America" by the distribution of the works of Henry George concerning private ownership of land, was upheld as a public charity, although the doctrines of Henry George were contrary to established law, which recognizes the right of private ownership of land. Other illustrations may be given where trusts which contemplated securing changes in existing laws were upheld. Thus, in Lewis's Est., 152 Pa. 477, a trust to "employ all legal and moral means to destroy and prevent" discrimination against the colored race in America was held valid, notwithstanding the existence in the southern states of laws requiring carriers to provide separate cars for colored persons. A trust to promote temperance and bring about prohibition was also upheld in Haines v. Allen, 78 Ind. 100, and Harrington v. Pier, 105 Wis. 485, and a trust to abolish vivisection in Re Fovaux, L. R. Ch. Div. (1895), vol. 2, 501, although the purpose of the trust involved the repeal of an act of parliament, the court there saying (page 507) : "The purpose of these societies, whether they are right or wrong in the opinions they hold, is charitable in the legal sense of the term. The intention is to benefit the community; whether, if they achieve their object, the community would, in fact, be benefited, is a question upon which, I think, the court is not required to express an opinion."

We are led to conclude that a trust for a public charity is not invalid merely because it contemplates the procuring of such changes in existing laws as the donor deems beneficial to the people in general, or to a class for whose benefit the trust is created. To hold that an endeavor to procure by proper means a change in a law is

in effect to attempt to violate that law would discourage improvement in legislation and tend to compel us to continue indefinitely to live under laws designed for an entirely different state of society. Such view is opposed to every principle of our government, based on the theory that it is a government "of the people, by the people and for the people," and fails to recognize the right of those who make the laws to change them at their pleasure when circumstances may seem to require. With the wisdom of the proposed change, the courts are not concerned. We perform our duty in determining whether or not the method adopted to make the change violates established law. In the present case, we find no apparent intent to violate any law. On the contrary, the trust specifically requires its objects to be accomplished by "lawful means." There is nothing inherently unlawful either in the object to be attained or the means to be adopted. The initiative and referendum have been adopted by numerous states, and our municipalities are continually endeavoring to secure greater efficiency and simplicity in the administration of local government. It would, consequently, be inconsistent to say that a trust fund created for the purpose of furnishing these objects by securing a revision of the statutes or amendments to the Constitution, as necessity may require, is for an illegal purpose because in violation of existing law. Whether the proposed changes are wise, or would remedy existing evils, is not for us to determine. That is a matter for the people and their representatives in the legislature to decide.

The decree of the lower court is affirmed at the costs of appellant.

DISSENTING OPINION BY MR. JUSTICE SCHAFFER:

In this case, I would follow the rule laid down in Jackson v. Phillips, 14 Allen, (Mass.) 539, and determine that the trust is not a charity; therefore, I dissent.