675 P.2d 813

In the Matter of the Appeal of SUNNY RIDGE MANOR, INC., from the Board of Equalization of Canyon County for the Year 1980.

CANYON COUNTY, IDAHO ASSESSOR, Appellant,

v.

SUNNY RIDGE MANOR, INC., Respondent.

No. 14552.

Supreme Court of Idaho.

Jan. 20, 1984.

Richard L. Harris, Canyon County Pros. Atty. and William Morrow, Deputy Canyon County Pros. Atty., Caldwell, for appellant.

Philip A. Peterson, Nampa, for respondent.

HUNTLEY, Justice.

We are asked to decide, as a matter of law, whether an old-age retirement center which charges fees to its residents sufficient to cover its operating expenses and all of the services it offers is a "charitable corporation" within the intendment of I.C. § 63–105C. That section exempts from taxation the "[p]roperty belonging to any fraternal, benevolent, or charitable corporation or society ...."

Respondent Sunny Ridge Manor, Inc. (Sunny Ridge), owner of the property for which a tax exemption is sought, is a nonprofit Idaho corporation organized to operate a retirement center. The center includes residential units, cooking areas and dining room, recreational facilities, craft and shop areas, a library, a convenience store, a barber and beauty shop, and a thirty-bed intermediate health care facility. Sunny Ridge began operation in 1980. The first residents purchased a "lifetime residency contract" for a one-time payment of $18,000 (a "founder's fee which would be refunded to the resident's estate upon death). In addition, each resident pays a monthly charge of $385.00 ($653.00 for a couple); the founder's fee has increased to $25,000.00 of which only $10,000.00 is refundable.

Proceeds from the entry fees are applied to the cost of construction of the center's facilities. The monthly fees cover the cost of operation. Although Sunny Ridge has incurred periodic losses, its monthly fees have sufficiently sustained its operating fund, and its operating expenses have been paid exclusively out of those fees. The center has never operated at a profit.

The "life-care" contracts which residents receive when they buy in to the retirement center provide that if the resident is physi-

cally able to be cared for by the center, he can remain there for the rest of his life. The medical care provided comes at no additional cost. Potential residents are advised that it is Sunny Ridge's policy that once admitted to the center, they will never be terminated for financial reasons.

To qualify for residency a person must be fifty-five or older, ambulatory, able to take care of himself, and free from any communicable or obnoxious disease. The "ambulatory" requirement has been interpreted to permit persons confined to wheelchairs to qualify.

The corporate directors of Sunny Ridge serve without compensation, and employees are paid reasonable salaries, comparable to those of employees of like facilities in the region. The convenience store and barber/beauty shop both operate at a small profit.

■ Sunny Ridge contends that as a nonprofit corporation which provides care and support to elderly persons, it comes within the meaning of "charitable corporation" in I.C. § 63–105C. Sunny Ridge urges an interpretation of "charitable" which is not restricted to the traditional notion of financial relief for the poor, but which would encompass a wide variety of services—social, recreational, cultural, psychological, religious and others—and which would recognize that the needs of the elderly are more complex than simple financial aid can address. With this interpretation we heartily agree. To be classed as charitable, an organization need not provide monetary aid to the needy; it may provide any of a number of services of public benefit. The word "charitable," in a legal sense, includes every gift for general public use, whether it be for educational, religious, physical or social benefit. *See, Santa Catalina Island Conservancy v. Los Angeles County,* 126 Cal.App.3d 221, 178 Cal.Rptr. 708, 716 (1981); *Mayo Foundation v. Comm'r of Revenue,* 306 Minn. 25, 236 N.W.2d 767, 771 (1975); *People ex rel. Redfern v. Hopewell Farms,* 9 Ill.App.3d 16, 291 N.E.2d 288, 290 (1972); *Central Bd. on Care of Jewish Aged, Inc. v. Henson,* 120 Ga.App. 627, 171 S.E.2d 747, 749 (1969); *Taylor v. Hoag,* 273 Pa. 194, 116 A. 826 (1922). *Cf. North Idaho Jurisdiction of Episcopal Churches, Inc. v. Kootenai County,* 94 Idaho 644, 650, 496 P.2d 105, 111 (1972) (nonprofit recreational facility held to be tax exempt under collective purview of charitable, religious and educational exemption states: I.C. § 63–105B, 105C and 105L).

■ Even though we agree with respondent Sunny Ridge that its services are of great benefit to its elderly residents and socially useful to promote other than their financial well being, and even though we consider Sunny Ridge's efforts, as a nonprofit corporation, praiseworthy, these considerations are not alone determinative of its charitable status under I.C. § 63–105C. A number of factors must be considered: (1) the stated purposes of its undertaking, (2) whether its functions are charitable (in the sense just discussed), (3) whether it is supported by donations, (4) whether the recipients of its services are required to pay for the assistance they receive, (5) whether there is general public benefit, (6) whether the income received produces a profit, (7) to whom the assets would go upon dissolution of the corporation, and (8) whether the "charity" provided is based on need. *See Rio Vista Non-Profit Housing Corp. v. Ramsey County,* 277 N.W.2d 187, 190 (Minn.1979). Determination of an institution's charitable status is necessarily an individual matter, to be decided on a case-by-case basis. There may be factors listed above which have no application to particular cases, and factors not listed which would need to be considered. The term "charity" "is really a matter of description rather than of precise definition and therefore a case involving a determination of that which is charitable must be decided upon its own particular facts or circumstances." *Lutheran Home, Inc. v. Board of County Commissioners,* 211 Kan. 270, 505 P.2d 1118, 1123 (1973).

■ We are mindful, however, of the rule which dictates that statutes granting tax exemptions be strictly construed

against the taxpayer and in favor of the state. *Xerox Corp. v. Ada County Assessor,* 101 Idaho 138, 141, 609 P.2d 1129, 1132 (1980); *Kwik Vend Inc. v. Koontz,* 94 Idaho 166, 168, 483 P.2d 928, 930 (1971). Exemptions are never presumed; nor can a statute granting tax exemption be extended by judicial construction so as to create an exemption not specifically authorized. *Sunset Memorial Gardens v. Idaho State Tax Comm'n,* 80 Idaho 206, 219, 327 P.2d 766, 774 (1958).

■ We turn now to the record in the instant case. It is undisputed that the stated purposes for which Sunny Ridge is organized are charitable, as that term is used in a general, non-legal sense. Sunnyridge's articles of incorporation contain language which, if confirmed in actual practice, would meet even the strictest of legal definitions of "charitable":

> "To establish a fund and solicit contributions thereto from individuals, institutions, government, churches and the business community for the purpose of providing moneys for the payment of and support of any resident of the residential facility who shall become without funds to pay his or her support. Further, to disburse moneys from said fund or from other reserves to a needy resident or on a needed charitable basis . . . ."

If such a fund were established, it would affect several of the factors listed above, including: that of a charitable function, support of the facility by donations, assistance provided without payment, and presence of some general public benefit. However, the record shows that no such fund was ever established, and as this court stated in *Bistline v. Bassett,* 47 Idaho 66, 272 P. 696 (1928), "[t]o ascertain whether the property of a corporation falls within an exemption statute . . . [the corporation] must not only be judged by its declared objects, but also by what use is actually made of [it]." *Id.* at 71, 272 P. at 697–8 (citations omitted).

■ We have discussed the contention of Sunny Ridge that "charity" in a legal sense contemplates more than "almsgiving to the poor," and recognized the validity of that assertion in light of the overwhelming weight of modern authority. *See, Fredericka Home For the Aged v. San Diego County,* 35 Cal.2d 789, 221 P.2d 68 (1950); *Bader Realty & Investment Co. v. St. Louis Housing Authority,* 358 Mo. 747, 217 S.W.2d 489 (1949); 37 A.L.R.3d 1191, 1197. Sunny Ridge's activities—the uses to which its property is devoted—which are designed to fulfill its residents' needs for recreation, society, culture, security, etc. are, if other factors are present, "charitable" within the scope of I.C. § 63–105C.

Although Sunny Ridge has received donations totaling in excess of $400,000.00, the record shows that of that amount $175,000.00 came from its own residents in the form of relinquishment of the refundable portion of their entrance fees. The balance is the estimated value of a portion of timber land donated to the center, which has generated no proceeds. None of the donations has been applied to the assistance fund described in the articles of incorporation.

■ One of the factors most frequently looked at by courts in determining if a retirement center is a charitable corporation is the amount of fees required of the residents. A number of jurisdictions have held that the traditional requirement of cost-free assistance no longer applies. An institution may still qualify for a tax exemption even if fees are taken from residents to help cover operating expenses. *See, e.g., Michigan Baptist Homes & Development Co. v. Ann Arbor,* 396 Mich. 660, 242 N.W.2d 749 (1976); *Belle Harbor Home of Sages, Inc. v. Tishelman,* 100 Misc.2d 911, 420 N.Y.S.2d 343 (1979), *aff'd,* 81 A.D.2d 886, 441 N.Y.S.2d 413 (1981); *Santa Catalina Island Conservancy v. County of Los Angeles,* 126 Cal.App.3d 221, 178 Cal.Rptr. 708 (1981). However, in the majority of cases so holding, the rule is premised on the fact that the charges are nominal, or at least not commensurate with the benefits provided. *See, Martin Luther Homes v. County of Los Angeles,* 12 Cal. App.3d 205, 90 Cal.Rptr. 524, 528 (1970)

(distinguishing the case of *Fifield Manor v. County of Los Angeles*, 188 Cal.App.2d 1, 10 Cal.Rptr. 242 (1961), which has been cited for Sunny Ridge's contention that services provided at cost may be "charitable" where no private profit is derived). *See also*, 37 A.L.R.3d 1191, 1203–1207. We note that Sunny Ridge charges its residents fees sufficient to cover all of its current operating expenses, as well as retire the debt on all of its facilities. It is difficult to view as charitable such an arrangement, and while we do not necessarily follow the lead of many jurisdictions which have held that fees charged which are "remunerative" in character are determinative of non-charitable status, we are persuaded that such a factor is of great importance and should be weighted accordingly. *Friendship Manor Corp. v. Tax Commission*, 26 Utah 2d 227, 487 P.2d 1272 (1971); *United Presbyterian Association v. Board of County Comm'rs*, 167 Colo. 485, 448 P.2d 967 (1969).

 The question of whether a nonprofit corporation provides a general public benefit, so as to be entitled to property tax exemption, is somewhat complex. Tax exemptions are disfavored generally, perhaps because they seem to conflict with principles of fairness—equality and uniformity—in bearing the burdens of government. *See, Hilltop Village, Inc. v. Kerrville Independent School District*, 426 S.W.2d 943, 947 (Tex.1968) *overruled on other grounds* in *City of McAllen v. Evangelical Lutheran Good Samaritan Society*, 530 S.W.2d 806 (Tex.1976). They are said to be justified, in cases of a charitable or benevolent organization for example, by an offsetting benefit to the community (monetary or otherwise). Hence has arisen the test that an institution may be entitled to an exemption where it performs a function which might otherwise be an obligation of government. A nonprofit corporation may benefit only a limited group of people and still be considered "charitable" if that group of people possess a need which government might be required to fill. For example, a facility for physically handicapped persons might be "charitable" even though those

persons were all members of a particular church or club because the facility is providing a general benefit to the community by relieving a potential obligation of government. However, where there is no assistance to individuals which might normally require governmental funds, as is the case with Sunny Ridge, the institution must meet a stricter test: it must provide benefits to the community at large (or, as some courts have stated it, to an "indefinite number of persons"). *See, e.g., Oasis, Midwest Center for Human Potential v. Rosewell*, 55 Ill.App.3d 851, 13 Ill.Dec. 97, 370 N.E.2d 1124, 1130 (1977); *Benton County v. Allen*, 170 Or. 481, 133 P.2d 991, 992 (1943). Since the residents at Sunny Ridge must be able to pay completely for the benefits they receive, and since they must be physically able to care for themselves, they are not a group of persons for whom any government assistance would be needed. Therefore, Sunny Ridge must provide some general benefit to the community as a whole. However, the benefits available at the center are reserved for the restricted group of persons who have met the entrance qualifications, and while in theory any member of the community who can meet those qualifications may join, in actual effect only a limited number of openings can exist during a given period of time. We find no fault in this; we simply recognize that benefits provided by Sunny Ridge must necessarily be limited to a relative few. It may be that an indirect benefit flows to the community; however, as pointed out by the court in *Massachusetts Medical Society v. Assessors of Boston*, 340 Mass. 327, 164 N.E.2d 325 (1960),

"Whether an institution is in its character literary, benevolent, charitable or scientific will depend upon the declared purposes and the actual work performed. (Citations omitted.) An institution will be classed as charitable *if the dominant purpose of its work is for the public good and the work done for its members is but the means adopted for this purpose. But if the dominant purpose of its work is to benefit its members or*

*a limited class of persons it will not be so classed, even though the public will derive an incidental benefit from such work."* *Id.* at 328. (Emphasis added.) We find it laudable that Sunny Ridge provides the care it does; however, as this court stated in *Sunset Memorial Gardens v. Idaho State Tax Commission,* 80 Idaho 206, 219, 327 P.2d 766, 774 (1958), "[t]he basis of tax exemptions is the accomplishment of public purpose and not the favoring of particular persons or corporations at the expense of taxpayers generally." If Sunny Ridge attempted to provide its services based on need to a greater extent, there might be more of a direct public benefit, even though the center can accommodate only a limited number of persons. As the record shows, however, there is no means provided by which individuals having particular needs for the types of services Sunny Ridge can provide are singled out for admission, or for assistance. Although the record shows that Sunny Ridge provides its care at substantial savings over what would be charged at a nursing home, for example, there is nothing in the record to indicate that this benefit of reduced costs is directed toward those who particularly need it. The savings may well benefit primarily persons who could afford to pay higher costs. In any case, the type of individual who needs nursing home care could not pass the entrance qualifications at Sunny Ridge.

Sunny Ridge points out that it has offered financial assistance to at least one resident since its organization in 1980. We note from the record, however, that this "assistance" consisted merely of allowing the resident to draw upon the refundable portion of her entrance fee to cover her monthly charges. There is nothing to indicate that any of the elderly residents of Sunny Ridge have received services—financial or otherwise—for which they have not paid in full value.

█ Although Sunny Ridge does not operate at a profit, and its articles of incorporation provide that upon dissolution the corporation's assets would be distributed to non-profit corporations or institutions ("as may be designated by the directors") "to be used for purposes similar to those of this corporation," these factors are not sufficient to here establish charitable status.

Based on the factors already discussed, and after consideration of the authorities cited, we hold as a matter of law that Sunny Ridge—under the particular circumstances of this case—is not a "charitable corporation" under I.C. § 63–105C. We emphasize that our determination is a narrow one: we are persuaded of a need to be flexible in such cases. We agree with the Colorado Supreme Court when it stated:

"We shall not attempt in this opinion to enunciate a fixed definition of the phrase 'strictly charitable purposes,' 'lest by words of exclusion we might unintentionally seem to impose a legal restraint upon that cardinal grace which by its very nature thrives in proportion to the freedom of its proper exercise." *United Presbyterian Ass'n v. Board of County Comm'rs,* 167 Colo. 485, 448 P.2d 967, 972 (1968)

We leave for determination at another time whether a similar nonprofit corporation—or, for that matter, whether this corporation, under different circumstances—is entitled to a property tax exemption under the terms of I.C. § 63–105C as it now reads.

Reversed, costs to appellant, no attorney's fees.

DONALDSON, C.J., and BAKES and BISTLINE, JJ., concur.

SHEPARD, J., dissents without opinion.

BISTLINE, Justice, specially concurring.

Having concurred, I write only to state what I believe I am agreeing to. First of all, it is noted that we are ruling as a matter of law. The discussion which ensues in the Court's opinion then discusses in some detail the facts of this case. From this I conclude that our holding today is

that although a retirement center[1] can qualify for tax exemption, in this case, under these facts, an exemption is not quite justified.

The case is a close one, and in my view could have gone either way, especially where we are required to say, but do not, that the trial judge was clearly in error.

The concept here is not only intended to be charitable, but cannot be other than in the best interests of all of the people of Idaho. Each passing decade has increased the need for reasonable and adequate housing for those who every ten years age ten or more years, and, who except for this type of planning, will exhaust their resources to the point that the state often becomes required to help out. I hope that qualification for nursing home admission is not seen as the touchstone of our decision, and that this type of commendable private endeavor is not to any extent discouraged.

---

1. The opinion is couched in terms of an "old-age retirement center." I do not understand that other groups, mentioning disabled veterans who may not be of old age, are excluded from consideration.