517 A.2d 1076

## SUPERVISOR OF ASSESSMENTS OF MONTGOMERY COUNTY

v.

## GROUP HEALTH ASSOCIATION, INC.

**No. 99, Sept. Term, 1985.**

Court of Appeals of Maryland.

Nov. 28, 1986.

Diana G. Motz, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Jane E. Pilliod, Asst. Atty. Gen. and Andrew H. Baida, Sp. Asst. Atty. Gen., on the brief), Baltimore, for appellant.

R. Kenly Webster (Martin D. Krall, P.C., Pamela H. Anderson and Shaw, Pittman, Potts & Trowbridge, on the brief), Washington, D.C., for appellee.

Argued before SMITH*, ELDRIDGE, COLE, RODOW-SKY, COUCH, McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), specially assigned.

COLE, Judge.

The question we must decide in this case is whether a nonprofit health maintenance organization (HMO), which operates primarily to provide health care services to its prepaid members, is a "charitable organization" for purposes of the property tax exemption provided by Maryland Code (1957, 1980 Repl.Vol.), Art. 81, § 9(e)(2).

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

We summarize the salient facts as follows. Appellee, Group Health Association, Inc. (GHA), is a nonprofit HMO and is exempt from federal income tax under § 501(c)(3) of the Internal Revenue Code. GHA operates seven health centers in the Washington, D.C., metropolitan area. Each of these centers provides health services to GHA members on a prepaid basis, primarily through physicians who are employed directly by GHA. An individual may join GHA either through a group employment plan or on an individual basis. Under a group employment plan, an employer offers the option of joining GHA to its employees as part of a health benefits package. If an employee chooses to join GHA, the cost of his membership is paid through a series of payroll deductions. Approximately ninety percent of GHA's total membership have joined through this type of group plan. Unlike group applicants, a person applying for membership on an individual basis may be denied if he has certain preexisting medical conditions.[1]

In 1983, the cost of membership ranged from $66.00 per month to $218.80 per month, depending on the type of coverage provided. GHA maintains a Special Assistance Fund that is used to help GHA members who cannot afford to continue paying membership costs because of some unusual financial difficulty.[2] This fund, however, is not available to aid nonmembers in paying the initial cost of membership.

Besides general health care services, GHA also engages in other activities. GHA conducts educational programs on various health topics, which are open to members and nonmembers. The registration information for these pro-

---

**1.** When GHA's revenues exceed its expenses for a given year, it offers an "open enrollment" period during which all applicants are admitted without screening for preexisting conditions. GHA has offered an open enrollment period only once in its 48–year history.

**2.** One-tenth of one percent of GHA's total annual premium revenue is allocated for the Fund. During the first six months of 1984, the Fund paid out a total of $11,285.36 to assist 29 of its members.

grams indicates, however, that GHA members have a preference if space is limited. GHA advertises its programs by posting brochures in its facilities. GHA also participates in internship programs with area medical schools as well as operates a Minor Injury Unit in downtown Washington, D.C., which provides treatment to both members and non-members.

For the 1983–84 tax year, GHA sought a property tax exemption for its Rockville facility pursuant to Maryland Code (1957, 1980 Repl.Vol.), Art. 81, § 9(e)(2).[3] Appellant, the Supervisor of Assessments of Montgomery County (Supervisor), denied the exemption to GHA. The Property Tax Assessment Appeals Board for Montgomery County affirmed the denial of the exemption. A hearing was then conducted on October 17, 1984, by the Maryland Tax Court.

At the proceedings before the Tax Court, both parties put on witnesses and introduced documentary evidence. GHA asserted that it was a charitable organization and sought to show this by proving the following: (1) it provides health care to 50,000–60,000 Maryland residents; (2) it provides individuals and employees with a means to obtain comprehensive health care while simultaneously curbing costs; (3) it benefits all Maryland residents by exerting substantial downward pressure on the costs of health care; and (4) it benefits Maryland residents through its various professional, educational, and emergency programs. The Supervisor attempted to prove that GHA is merely a cooperative organization providing services to its members. The Supervisor maintained that GHA is supported almost exclusively by membership charges, not donations, and that GHA does not benefit any nonmembers, even those who are indigent or infirm.

---

**3.** Section 9(e)(2) exempts property owned by "any nonprofit charitable, fraternal or sororal, benevolent, educational, or literary institutions or organizations ... when any of such property described above is actually used exclusively for and necessary for charitable, benevolent, or educational purposes ... in the promotion of the general public welfare of the people of the State."

In rendering its decision, the Tax Court began by reviewing the applicable statute, Art. 81, § 9(e)(2). That section grants an exemption from real property taxation to property owned by any nonprofit charitable, benevolent, or educational organizations, when such property is actually used for and is necessary for charitable, benevolent, or educational purposes. The court also recognized that Maryland law requires these exemptions to be strictly construed. Before the Tax Court set forth its findings of fact, it noted that the "facts are really not in dispute." First, the court found that GHA's purpose is "to provide medical care for a reasonable price, ... more or less it's a prepaid medical care facility." The court then found that GHA provides some educational services to its members, but that *"from a factual standpoint* ... the primary purpose of this organization is to provide high quality medical care, and I emphasize high quality, to its members for a fee." (Emphasis added). Further, the court declared:

> The charitable and educational aspect and benevolent aspects of Group Health Association's activities, the Court finds are only incidental to its main function, and that is to provide high quality medical care.

> This Court does not intend to in any way minimize the value of the organization, in its attempt to help the public welfare, in very general terms. But we think that the benefit to the general public is certainly secondary to the benefit afforded to its members and its doctors and its employees.

The Tax Court pointed out that GHA's exemption from federal income taxation is not determinative in this case and is, instead, merely another factor to consider. After expressing its doubt as to whether the legislature intended to afford GHA relief from real property taxes, the Tax Court concluded that GHA is not a charitable organization and thus not entitled to an exemption from real property taxation.

The Tax Court's decision was appealed and reversed by the Circuit Court for Montgomery County. The circuit

court noted the absence of any real factual dispute between the parties and ruled that the issue to be decided was solely a question of law. The Supervisor filed a notice of appeal from the circuit court's decision in the Court of Special Appeals and also filed a petition for a writ of certiorari in this Court. We granted certiorari before the intermediate appellate court reviewed the case.

Both parties maintain, and we agree, that judicial review of decisions of the Maryland Tax Court is severely limited. Maryland Code (1957, 1980 Repl.Vol., 1986 Cum.Supp.), Art. 81, § 229(*o* ), provides that on appeal "[t]he circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record." When this Court reviews a Tax Court decision, the narrow scope of review set forth in § 229(*o* ) is equally applicable. *See, e.g., Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296, 1303 (1985); *Comptroller v. Haskin,* 298 Md. 681, 689–90, 472 A.2d 70, 76–77 (1984); *Comptroller v. Diebold, Inc.,* 279 Md. 401, 407, 369 A.2d 77, 81 (1977).

GHA maintains that the Tax Court construed the term charitable incorrectly and thus erred as a matter of law. GHA also maintains that because the facts are undisputed, the determination of its charitable status is a question of law. The Supervisor responds by arguing that the Tax Court applied the correct legal standard and that the determination of an organization's charitable status is a question of fact notwithstanding the lack of disputed facts. We agree with the Supervisor and explain.

■ The Tax Court did not make an error of law. The court reviewed § 9(e)(2) and recognized that the section provides a tax exemption from real property that is (1) owned by a charitable, benevolent, or educational organization and (2) actually used and necessary for the charitable, benevolent, or educational purposes. We do not at this time attempt to establish a hard-and-fast rule as to the meaning of "charitable" for purposes of § 9(e)(2). Indeed, we doubt

whether such a rule can be formulated. *See, e.g., Evangelical Retirement Homes v. State Tax Commission,* 669 S.W.2d 548 (Mo.1984); *Appeal of Sunny Ridge Manor, Inc.,* 106 Idaho 98, 675 P.2d 813 (1984); *In re Doctor's Hospital,* 51 Pa.Commw. 31, 414 A.2d 134 (1980). Clearly, however, a determination of whether an institution is charitable must include a careful examination of the stated purposes of the organization, the actual work performed, the extent to which the work performed benefits the community and the public welfare in general, and the support provided by donations. *See, e.g., Appeal of Sunny Ridge Manor, Inc., supra,* 106 Idaho at 100, 675 P.2d at 815; *Harvard Community Health Plan, Inc. v. Board of Assessors,* 384 Mass. 536, 540–44, 427 N.E.2d 1159, 1162–64 (1981); *Massachusetts Medical Society v. Assessors of Boston,* 340 Mass. 327, 332–33, 164 N.E.2d 325, 328–29 (1960). The Tax Court considered all of these factors, and we think the Tax Court understood the law and applied it correctly to the facts.

■ We must next determine whether the Tax court's factual finding is supported. We have recently rejected the contention that the absence of a factual dispute between the parties necessarily requires resolution of the case as a matter of law. In *Board of Education v. Paynter,* 303 Md. 22, 491 A.2d 1186 (1985), § 6(a) of the Maryland Unemployment Insurance Law was at issue. That section provides that an individual is disqualified for all benefits if his unemployment is the result of voluntarily leaving work without "good cause." Paynter, a teacher formerly employed by Montgomery County, applied for unemployment benefits and asserted that he left his job for good cause. The Board of Education responded by claiming that Paynter left without good cause. The Board of Appeals of the Employment Security Administration (Board of Appeals) referred the matter to a referee, who conducted an evidentiary hearing. Based on undisputed evidence, the referee determined that Paynter left his job for good cause.

The Board of Education argued that because no facts were disputed, and the case turned on the meaning of the statutory term "good cause," the case should be decided solely as a question of law. We rejected the Board of Education's argument and instead applied the substantiality of the evidence test to determine if the referee's conclusion—that Paynter had good cause to quit his job—was supported by substantial evidence.

We further noted that the facts of the case were subject to conflicting inferences as to whether Paynter left his job with or without good cause. In conclusion, we declared that it was the duty of the trier of fact, not the reviewing court, to draw the inference. *Id.* at 38–40, 491 A.2d at 1194–95.

We made a similar point in *Ramsay, Scarlett & Co., v. Comptroller, supra,* which involved the determination of whether the various in-state and out-of-state business activities carried on by Ramsay, Scarlett constituted a "unitary business" for purposes of assessing corporate income tax. We held that, notwithstanding the absence of a factual dispute between the parties, the determination of whether a business is "unitary" is not a question of law that permits a reviewing court to substitute its judgment for the judgment of the agency. We therefore applied the substantial evidence test and found that the Tax Court's order was supported by substantial evidence. *Id.* at 836–38, 490 A.2d at 1302–03.

In *Baltimore Lutheran High School Association, Inc. v. Employment Security Administration,* 302 Md. 649, 490 A.2d 701 (1985), we again applied the substantial evidence test and refused to make independent findings of fact. In that case, § 20(g)(7)(v) of the Maryland Unemployment Insurance Law was involved. That section exempts services by employees of an organization operated "primarily for religious purposes." Baltimore Lutheran sought a ruling from the Board of Appeals that its school employees were exempt. Baltimore Lutheran put on evidence of, *inter alia,*

the school's mandatory chapel services, Lutheran philosophy of education, and use of the Bible in the classroom. The Board of Appeals, however, found that the school was not primarily operated for religious purposes. On appeal to this Court, we refused to reevaluate the undisputed facts presented to the Board of Appeals and merely reviewed the entire record to determine if the Board of Appeal's conclusion was supported by substantial evidence. In upholding the decision of the agency, we emphasized:

> Furthermore, even if conflicting inferences could be drawn from the factual findings made by [the] Board ... in the exercise of its function as the trier of fact, that is, it could be inferred that the School was or was not primarily religious, it is for the Board to draw the inference, not the reviewing court.

*Id.* at 664, 490 A.2d at 709.

Like *Baltimore Lutheran, Ramsay, Scarlett,* and *Paynter,* the facts are undisputed in the case at bar. Here, the central issue is whether GHA is a "charitable organization" under § 9(e)(2). The Tax Court was the trier of fact on that issue and we will not now reevaluate its decision *de novo.* Conflicting inferences as to whether GHA is or is not a charitable organization are present, and it is the province of the Tax Court, not the reviewing court, to draw the inference.

We shall apply the substantial evidence test. We have defined the "substantial evidence test" as "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached," or as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 512, 390 A.2d 1119, 1124 (1978) and cases cited therein. In addition, "this review should not consist of judicial fact-finding or a substitution of judicial judgment for agency judgment." *Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 398, 396 A.2d 1080, 1089 (1979). Finally, it is well recognized that the reviewing court should rely on the agency's expertise, *Bernstein v.*

*Real Estate Commissioner,* 221 Md. 221, 230, 156 A.2d 657, 662–63 (1959), *appeal dismissed,* 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960), and "review the agency's decision in the light most favorable to the agency," *Bulluck v. Pelham Wood Apartments, supra,* 283 Md. at 513, 390 A.2d at 1124.

■ We think that a reasoning mind could easily reach the Tax Court's conclusion based on the record in this case. The Tax Court found as a fact that GHA's primary purpose is not charitable, benevolent, or educational, but rather is to provide "high quality medical care to its members for a fee." The Tax Court also found as a fact that GHA's charitable, benevolent, and educational aspects are only incidental to its main function of providing health care services to its members. Although the Tax Court noted that GHA attempted to "help the public welfare, in very general terms," it concluded that the benefit to the public is "certainly secondary to the benefit afforded to its members and its doctors and its employees." We believe that the record amply supports these findings. GHA's Articles of Incorporation, Certificate of Reincorporation, and bylaws all declare that the purpose of the organization is to provide medical care to members and their dependents. Moreover, there was testimony that providing health care services is, in actuality, the major activity carried on by GHA. Furthermore, there was evidence that GHA does not take "charity" cases. Finally, testimony showed that GHA receives only *de minimis* contributions and is supported almost solely by membership fees.

Contrary to the opinion and order of the circuit court, we do not think that the Tax Court concluded that the provision of medical services for a fee could simply not be charitable or benevolent within the meaning of the statute. Rather, the Tax Court simply found that GHA did not provide sufficient benefit to the community to justify exemption from real property taxes. The Tax Court's factual determi-

nation that GHA is not a charitable organization is supported by substantial evidence.

Finally, GHA argues that we should make a *de novo* review of its charitable status and cites *Supervisor of Assessments v. Carroll*, 298 Md. 311, 469 A.2d 858 (1984), and *Comptroller v. Mandel Re-election Committee*, 280 Md. 575, 374 A.2d 1130 (1977). Those cases, however, do not mandate such action.

In *Carroll*, the Supervisor assessed residences located on a farm at the residential basis, not the agricultural basis. On basically undisputed facts, the Tax Court held that each homesite occupied by a farm employee qualified for assessment on the agricultural basis. We again noted that our review was limited by Art. 81, § 229(*o* ), and then concluded that the Tax Court had made a legal error. We held that use of land for *residential* use is not land devoted to *agricultural* use, and thus the Tax Court applied the wrong legal standard when making its decision.

Likewise, in *Mandel Re-election Committee*, we found that the Tax Court applied the incorrect standard of law. Again, the facts were undisputed. At a political fundraiser at the Baltimore Civic Center, two organists were paid $130.00 to play background music. The Comptroller concluded that because there was live music, there was a performance, and thus an admission tax was due. The Tax Court agreed. We found that the Tax Court had not interpreted the term "performance" correctly, and had not considered the appropriate factors when making its conclusion. We therefore held that the Tax Court made an error of law.

As we previously stated, the Tax Court in the case at bar did not make an error of law it correctly interpreted the term "charitable." As such, this case is not like *Carroll* and *Mandel Re-election Committee*, and we are not free to substitute our judgment for the Tax Court's.

In sum, the Tax Court applied the correct legal standard and its findings are supported by substantial evidence.

# 162

JUDGMENT OF THE CIRCUIT COURT FOR MONT-
GOMERY COUNTY IS REVERSED AND CASE RE-
MANDED TO THAT COURT FOR AN ENTRY OF JUDG-
MENT AFFIRMING THE ORDER OF THE MARYLAND
TAX COURT; COSTS TO BE PAID BY THE APPELLEE.