# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43697/43698

EVANGELICAL LUTHERAN GOOD )
SAMARITAN SOCIETY, ) Boise, November 2016 Term
)
    Petitioner-Respondent, ) 2016 Opinion No. 152
)
v. ) Filed: December 21, 2016
)
BOARD OF EQUALIZATION OF ADA ) Stephen Kenyon, Clerk
COUNTY, )
)
    Respondent-Appellant. )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

The judgment of the district court is <u>reversed</u>.

Ada County Prosecuting Attorney, Boise, for appellant. Gene Petty argued.

Greener Burke Shoemaker Oberrecht, P.A., Boise, for respondent. Phillip S. Oberrecht argued.

_____

HORTON, Justice.

This is an appeal from the district court's ruling granting Evangelical Lutheran Good Samaritan Society (Society) a charitable property tax exemption. The Board of Equalization of Ada County (Ada County) appeals from the district court's decision holding that Society qualified for a charitable property tax exemption under Idaho Code section 63-602C. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Society is incorporated under the laws of North Dakota and has authority to conduct business in Idaho. Society is recognized as a tax exempt organization under Section 501(c)(3) of the Internal Revenue Code and a public charity pursuant to Section 509(a)(2). Society operates about 240 elder care facilities in 24 states. Society operates four facilities in Idaho.

Boise Village is a 96-bed skilled nursing facility located in Ada County. In 1958, Society assumed ownership of Boise Village. Boise Village is one of ten skilled nursing facilities in Boise. Boise Village operations are similar to those of commercial nursing facilities in the area.

1

During the relevant time period, Boise Village expected all residents to pay for the services they received. Boise Village charges rates comparable to those charged at local skilled nursing facilities. Boise Village has never admitted a resident knowing that resident would not be able to pay.

Society receives donations to help operate Boise Village. Boise Village received unrestricted gifts of $72,209 in 2012 and $39,206 in 2013. The amount of donations is small in comparison with Boise Village's operating revenue for that time. In 2012, Boise Village had operating revenue of $9,769,537 and $9,836,951 in 2013. The vast majority of Boise Village's operating revenue came from government programs such as Medicaid, Medicare and the Veterans Administration. For the years 2011–2013 Boise Village received 87%, 90%, and 94% of its operating revenue from state and federal programs respectively. In 2012, Boise Village earned a profit of $49.84 per Medicaid resident per day, amounting to $18,191.60 per Medicaid resident annually.

Residents who are admitted to Boise Village are required to sign an admissions agreement in which the residents promise to pay for care and agree to late charges if their bill is more than 10 days overdue. For overdue accounts, Boise Village and Society each manage a collection team which operates similar to collection teams at commercial facilities. In 2012, Boise Village filed one lawsuit to collect on a bill but did not file any suits in 2013. Boise Village granted charitable allowances of $31,281.88 and $7,004.75 in 2012 and 2013 respectively for residents who were unable to pay through no fault of their own. These charitable allowances were given only after services had been provided and Society determined that it would be unable to collect the debt.

Boise Village also has an active volunteer program and relies heavily on volunteers for its activities program. Boise Village recorded 12,707.25 volunteer hours in 2012 and 10,053.15 in 2013. Even though volunteers help with activities, they do not reduce staffing or the amount charged to residents at Boise Village.

Society received charitable and religious property tax exemptions for Boise Village until 2012. Ada County denied Society's application for a tax exemption for Boise Village in 2012. Society appealed and the Idaho Board of Tax Appeals upheld Ada County's decision. Ada County again denied Society's application for 2013. Society appealed directly to the district court where the two cases were consolidated. Society then applied for a tax exemption for 2014

which was also denied. The parties stipulated that the outcome of the case regarding 2012 and 2013 would also apply to 2014. Following a six-day trial, the district court found that Society qualified for a full property tax exemption as a charitable organization and for a 12.3% property tax exemption as a religious organization. Ada County timely appealed the district court's ruling that Society qualified for a charitable tax exemption but has not appealed the finding that Society was eligible for a partial religious exemption.

## II. STANDARD OF REVIEW

"Interpretations of requirements for charitable exemption from property tax are questions of law over which this Court exercises free review." *Housing Southwest Inc. v. Washington Cnty.*, 128 Idaho 335, 337, 913 P.2d 68, 70 (1996) (citing *Owyhee Motorcycle Club, Inc. v. Ada Cnty.*, 123 Idaho 962, 964, 855 P.2d 47, 49 (1993)). "Statutes granting tax exemptions must be strictly construed against the taxpayer and in favor of the state." *Id.* at 337–38, 913 P.2d at 70–71. "Exemptions are never presumed; nor can a statute granting a tax exemption be extended by judicial construction to create an exemption not specifically authorized." *Id.* at 338, 913 P.2d at 71.

## III. ANALYSIS

The only issue on appeal is whether Society qualifies for a property tax exemption under Idaho Code section 63-602C. The statute provides:

> The following property is exempt from taxation: property belonging to any fraternal, benevolent, or charitable limited liability company, corporation or society, the World War veteran organization buildings and memorials of this state, used exclusively for the purposes for which such limited liability company, corporation or society is organized; provided, that if any building or property belonging to any such limited liability company, corporation or society is leased by such owner or if such limited liability company, corporation or society uses such property for business purposes from which a revenue is derived which, in the case of a charitable organization, is not directly related to the charitable purposes for which such charitable organization exists, then the same shall be assessed and taxed as any other property…provided however, that the lease or use of any property by any such limited liability company, corporation or society for athletic or recreational facilities, residence halls or dormitories, meeting rooms or halls, auditoriums or club rooms within the purposes for which such limited liability company, corporation or society is organized, shall not be deemed a business or commercial purpose, even though fees or charges be imposed and revenue derived therefrom.

I.C. § 63-602C. Interpreting this statute, this Court has held that "[i]n order to be granted an exemption the organization must first prove that it is a charitable organization, and secondly, that

3

the claimed exempt property is used exclusively for charitable purposes." *Evangelical Lutheran Good Samaritan Soc'y v. Bd. of Equalization of Latah Cnty.*, 119 Idaho 126, 131, 804 P.2d 299, 304 (1990).

## A. Society is not a charitable organization under the *Sunny Ridge* analysis.

Idaho Code section 63-602C does not provide a definition of "charitable organization." In *Appeal of Sunny Ridge Manor, Inc.*, 106 Idaho 98, 675 P.2d 813 (1984), this Court stated that in order to be a charitable organization, an organization need not provide monetary relief to the needy but it needs to provide a gift for public benefit. *Sunny Ridge*, 106 Idaho at 100, 675 P.2d at 815. In *Sunny Ridge*, this Court identified eight factors to consider when determining whether an organization qualifies as charitable. These factors are:

> (1) the stated purposes of its undertaking, (2) whether its functions are charitable (in the sense just discussed), (3) whether it is supported by donations, (4) whether the recipients of its services are required to pay for the assistance they receive, (5) whether there is general public benefit, (6) whether the income received produces a profit, (7) to whom the assets would go upon dissolution of the corporation, and (8) whether the "charity" provided is based on need.

*Id.* "Determination of an institution's charitable status is necessarily an individual matter, to be decided on a case-by-case basis." *Id.* Not all of the factors listed need to be considered for each case and there may be factors not listed that need to be considered. *Id.* "The term 'charity' is really a matter of description rather than of precise definition and therefore a case involving a determination of that which is charitable must be decided upon its own particular facts or circumstances." *Id.* The main question is whether the organization provides a public benefit and so qualifies as a charitable organization.

The district court found that Society was a charitable organization after applying the *Sunny Ridge* factors. Ada County contends that the district court erred when it found that Society was a charitable organization. Ada County also argues that Society is not a charitable organization because this Court has previously held that they were not a charitable organization in *Evangelical Lutheran Good Samaritan Soc'y v. Bd. of Equalization of Latah Cnty.*, 119 Idaho 126, 804 P.2d 299 (1990). Because this determination must be made on a case by case basis, this Court will examine the facts in this case as they relate to the *Sunny Ridge* factors rather than simply deciding this appeal based upon our previous holding in another case involving Society.

### 1. The stated purposes of its undertaking.

Ada County concedes that Society meets the first factor of the *Sunny Ridge* analysis.

## 2. Whether its functions are charitable.

The district court found that Society's functions were charitable because it provided shelter and care for the aged, disabled, and infirm through its ministry and specifically at Boise Village. Ada County argues that Society does not meet this factor because it does not function like a charitable organization. Ada County is correct.

In determining whether an organization performs a charitable function, this Court looks to see if the organization is performing a function which otherwise might be an obligation of the government. *Housing Southwest*, 128 Idaho at 339, 913 P.2d at 72. In *Housing Southwest*, this Court found that an organization which provided low-income housing was not a charitable organization. *Id.* This Court applied the *Sunny Ridge* factors in determining whether the organization was charitable. *Id.* at 338, 913 P.2d at 71. In examining the second factor, this Court found that even though the organization provided low-income housing, its functions were not charitable because it received money from government programs to offset the costs of providing the housing. *Id.* at 339, 913 P.2d at 72. In *Housing Southwest*, the organization argued that it met a need that otherwise would need to be met by the government when it provided low-income senior citizens and disabled persons housing. *Id.* We rejected this argument, observing that "[t]his argument is circular in that the need Housing Southwest meets is in fact being met by government through tax-supported FHA subsidies." *Id.*

Here, Society's functions are not charitable because it is not performing a function which would otherwise be the obligation of the government. Society is compensated for all the services it provides either by the resident or by the government in the case of residents who cannot afford the care themselves. Like the organization in *Housing Southwest*, Society is dependent on government programs. Society argues that its functions are charitable because it cares for the elderly who would need to be cared for by the State otherwise. As we noted in *Housing Southwest*, this argument is circular. Society cares for the elderly but is compensated either by the residents or by the State for that care. As Society does not perform a function that otherwise would be performed by the government it does not meet this factor of the *Sunny Ridge* analysis.

## 3. Whether it is supported by donations.

The third factor considers whether the organization is supported by donations. *Sunny Ridge*, 106 Idaho at 100, 675 P.2d at 815. The district court found that Boise Village and Society were supported by donations of both money and volunteer time and this factor weighed in

Society's favor. Ada County argues that Society is only nominally supported by donations. Ada County points to the fact that only 0.5% of Boise Village's operating revenue came from donations whereas 99% came from charging for services. Ada County further argues that neither the money donations nor the volunteer hours provided a direct benefit in the form of offset costs to residents. Ada County is correct.

"This Court considers outside donations to be an important charitable factor because it reduces the cost to the general public." *Owyhee Motorcycle Club, Inc. v. Ada Cnty.*, 123 Idaho at 965, 855 P.2d at 50. In *Owyhee Motorcycle Club*, this Court found this factor weighed against the organization because the general public did not receive a benefit from the donations to the club. *Id.*

Although Society receives both monetary donations and donations of volunteer time, these donations do not reduce the cost of care to the general public. The district court found that the donations to Society do not reduce the direct cost of services at Boise Village. Because the donations received by Society do not reduce the cost to the residents, this factor weighs against Society.

### 4. Whether the recipients of its services are required to pay for the assistance they receive.

The next factor considers whether recipients of the charity are required to pay for the services they receive. *Sunny Ridge*, 106 Idaho at 100, 675 P.2d at 815. The district court correctly pointed out that this factor is one, "of great importance and should be weighted accordingly." The district court found that because this Court has never applied this factor with regard to a skilled nursing facility that a flexible standard would be more appropriate. The flexible standard adopted by the district court looks not at whether residents were required to pay but the policies of the organization and what would happen if they were unable to pay. In applying this factor, the district court found that because it is the policy of Society and Boise Village not to evict a resident for failure to pay that this factor was met. Ada County argues that the same analysis should be applied to every facility regardless of the type of services provided. Ada County is correct.

This Court has said, "[e]xemptions are never presumed; nor can a statute granting tax exemption be extended by judicial construction so as to create an exemption not specifically authorized." *Sunny Ridge*, 106 Idaho at 101, 675 P.2d at 816. Following *Sunny Ridge*, this Court

has consistently applied that same analysis in determining if an organization was charitable regardless of the type of services provided by the organization. *See Sunny Ridge*, 106 Idaho 98, 675 P.2d 813 (applying the analysis to a retirement center); *Housing Southwest v. Washington Cnty.*, 128 Idaho 335, 913 P.2d 68 (1996) (applying the analysis to a low-income housing facility for senior citizens and disabled persons); *Cmty. Action Agency, Inc. v. Bd. of Equalization of Nez Perce Cnty.*, 138 Idaho 82, 57 P.3d 793 (2002) (applying the analysis to a low-income housing facility); *Evangelical Lutheran Good Samaritan Soc'y*, 119 Idaho 126, 804 P.2d 299 (applying the analysis to a retirement center); *Coeur d'Alene Public Golf Club v. Kootenai Bd. of Equalization*, 106 Idaho 104, 675 P.2d 819 (1984) (applying the analysis to a golf course); *Owyhee Motorcycle Club*, 123 Idaho 962, 855 P.2d 47 (applying the analysis to a motorcycle club); *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Ada Cnty.*, 123 Idaho 410, 849 P.2d 83 (1992) (applying the analysis to the property owning arm of a church); *Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization*, 157 Idaho 180, 335 P.3d 25 (2014) (applying analysis to property owning arm of charitable organization). Because the legislature has not created an exemption specifically for skilled nursing facilities, and because this Court has consistently applied the same analysis to all charitable organizations, the district court erred when it applied a modified factor to Society. While district courts have flexibility in weighing the factors, they may not modify the factors which this Court has consistently applied.

The district court found that Society charged residents at Boise Village fees that are comparable to local skilled nursing facilities. This factor is one "of great importance and should be weighted accordingly." *Sunny Ridge*, 106 Idaho at 101–02, 675 P.2d 816–17. This Court has also held that "there is nothing charitable in providing housing at the same or comparable rates as housing available from the private sector or commercial retirement centers." *Evangelical Lutheran Good Samaritan Society*, 119 Idaho at 132, 804 P.2d at 305. Because Society charges residents at Boise Village the same rates as they would be charged at a commercial skilled nursing facility, this factor weighs against Society.

### 5. Whether there is general public benefit.

The fifth *Sunny Ridge* factor looks to see whether an organization provides a general public benefit. *Sunny Ridge*, 106 Idaho at 100, 675 P.2d at 815. The district court found that the way Society ran Boise Village met this factor for two reasons. First, it found that providing care to the elderly, poor, and infirm was fulfilling a government obligation that the State of Idaho has

long recognized as a government obligation. The district court also found that Society provided a number of benefits to the local, national, and international community and thus provided a general public benefit. Ada County argues that Society is not fulfilling a need which the government otherwise would have to fulfill because it is subsidized for the care it provides and that Society does not provide a general public benefit.

"Tax exemptions are disfavored generally, perhaps because they seem to conflict with principles of fairness—equity and uniformity—in bearing the burdens of government." *Sunny Ridge*, 106 Idaho at 102, 675 P.2d at 817. Tax exemptions are justified because a charitable organization provides an offsetting benefit to the general public. *Id.* In *Housing Southwest*, this Court explained general public benefit, stating:

> For a corporation's uses to be considered charitable it is essential that they provide some sort of general public benefit. If the general public does not receive a direct benefit from a corporation's donations, then the question presented by the 'general public benefit' factor is whether the corporation fulfills a need which the government might otherwise be required to fill. While the requirement that a corporation lessen the burden of government is but one factor to be considered in determining tax exempt status, it is nevertheless an important one.

*Housing Southwest*, 128 Idaho at 339, 913 P.2d at 72 (citations omitted). When an organization is subsidized by the government for its services, it does not provide a public benefit. *Id.*

In *Housing Southwest*, this Court found that an organization that provided low-income housing to elderly and disabled persons was not a charitable organization. *See Housing Southwest*, 128 Idaho 335, 913 P.2d 68. In analyzing the public benefit factor of the *Sunny Ridge* analysis, this Court found that the organization did not provide a general public benefit because it received money from government programs. *Id.* at 339, 913 P.2d at 72. While discussing the organization's argument that it fulfilled an obligation that the government would otherwise need to fulfill, this Court noted that that argument was circular because the government was in fact fulfilling that obligation by paying for it. *Id.*

Here, Society receives the majority of its funding through the government. Between 2011 and 2013, Boise Village received 87%, 90% and 94% of its budget from government programs. While caring for the elderly and disabled is a recognized obligation of government, Society does not fulfill that obligation for the government because it is compensated by the government for those services. Because Society does not fulfill an obligation that the government otherwise would need to fulfill, it fails to meet this factor.

8

Further, Society does not provide a direct benefit to the general public. Society provides its services specifically to those residents who are cared for at Boise Village and not to the general public. While the general public does receive some benefit from Society being in the community, these benefits are not as a direct result of the services provided by Society. Because Society's services do not directly benefit the general public, this factor weighs against it.

### 6. Whether the income received produces a profit.

The sixth *Sunny Ridge* factor is whether the income received produces a profit. *Sunny Ridge*, 106 Idaho at 100, 675 P.2d at 815. In finding that this factor weighed in favor of Society, the district court focused on how the profits were used. Ada County argues that this Court should focus on profits produced by Boise Village and whether those profits reduced the costs to the residents. Because Society received large profits from Boise Village, this factor weighs in favor of Ada County.

While an organization is not required to operate at a deficit, accrual of profits is still a factor to consider. *Evangelical Lutheran Good Samaritan Soc'y*, 119 Idaho at 132 n. 2, 804 P.2d at 305 n. 2. "[T]he accrual of substantial positive net revenue year after year, excluding donation, is suspect." *Id.* In finding that an organization was not a charitable organization in *Evangelical Lutheran Good Samaritan Society*, this Court found that the accrual of substantial profits weighed against the organization. *Id.*

In this case, Society earns substantial revenue from Boise Village. Between 2011 and 2013, Boise Village profits totaled more than $2 million. While none of the excess revenue was distributed, this case is similar to the prior case involving Society where this Court found that Society was not a charitable organization. As all tax exemptions must be construed against the tax payer, this factor, while close, weighs against Society.

### 7. To whom the assets would go upon dissolution of the corporation.

Ada County concedes that Society meets this factor of the *Sunny Ridge* analysis.

### 8. Whether the "charity" provided is based on need.

The final factor considers whether Society provides charity based on need. *Sunny Ridge*, 106 Idaho at 100, 675 P.2d at 815. The district court found that based on Society's policies and practices that this factor should be evaluated expansively and weighed in favor of Society. Ada County argues that because Society does not utilize a sliding scale and because it charges rates

comparable to other nursing facilities in the area that Society fails this factor. Ada County is correct.

This Court in *Owyhee Motorcycle Club* noted, "[w]e have indicated that to maintain tax exempt status, an organization should provide charitable assistance in the form of reduced costs for those who need it." 123 Idaho at 966, 855 P.2d at 48. This factor weighed against Owyhee Motorcycle Club as it did not provide reduced costs for those in need. *Id.*

Here, Society does not provide services at a reduced cost based on need. Although Society has provided nearly $40,000 in charitable allowances, those allowances were not made until after Society unsuccessfully attempted to collect the debt. The district court erred when it took an "expansive view" of this factor. As noted above, district courts may not change the factors that have been laid out by this Court. Because Society does not provide its charity based on need, this factor weighs against Society.

"Statutes granting tax exemptions must be strictly construed against the tax payer and in favor of the state." *Cmty. Action Agency, Inc. v. Bd. of Equalization of Nez Perce Cnty.*, 138 Idaho 82, 85, 57 P.3d 793, 796 (2002). "The Society must satisfy its burden and clearly establish a right to the exemption provided in the statutes before an exemption pursuant to those statutes will be granted." *Evangelical Lutheran Good Samaritan Soc'y*, 119 Idaho at 129, 804 P.2d at 302. While there are facts that weigh in favor of Society, the statute must be strictly construed against Society which bears the burden of clearly establishing a right to the exemption. We hold that Society failed to meet that heavy burden and Society is not a charitable organization for purposes of Idaho Code section 63-602C under the *Sunny Ridge* analysis.

**B. Society's use of its property for charitable purposes.**

Because Society is not a charitable organization, we do not address the second requirement of Idaho Code section 63-602C.

### IV. CONCLUSION

We reverse the judgment of the district court granting Society a charitable tax exemption and award costs on appeal to Ada County.

Chief Justice J. JONES, Justices EISMANN, BURDICK and Justice Pro Tem KIDWELL, **CONCUR**.