# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51890-2024

| | |
|---|---|
| FIRST PRESBYTERIAN CHURCH OF BOISE, IDAHO, INC., an Idaho religious and charitable corporation, <br><br> Petitioner-Appellant, <br><br> v. <br><br> ADA COUNTY, by and through its Board of Equalization, a political subdivision of the State of Idaho, <br><br> Respondent. | Boise, June 2025 Term <br><br> Opinion filed: August 20, 2025 <br><br> Melanie Gagnepain, Clerk |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. James S. Cawthon, District Judge.

The decision of the district court is <u>reversed</u>.

Racine Olson, PLLP, Boise, for Appellant. John R. Goodell argued.

Jan M. Bennetts, Ada County Prosecuting Attorney, Boise, for Respondent. Robert A. Berry argued.

_____

ZAHN, Justice.

This case concerns whether First Presbyterian Church of Boise, Idaho, Inc. ("FPC") is entitled to a 100% property tax exemption for its church located in Boise. FPC filed a Property Tax Exemption Application with the Ada County Board of Commissioners ("Commissioners"), seeking a 100% tax exemption pursuant to Idaho Code section 63-602B, which provides an exemption for property belong to religious corporations. The Commissioners approved only an 82% partial tax exemption because a portion of the church was used by the Young Men's Christian Association of Boise City ("YMCA") to operate a daycare program. FPC appealed to the Ada County Board of Equalization ("BOE"), which affirmed the 82% tax exemption. FPC then appealed to the district court, which affirmed the BOE's decision.

On appeal to this Court, FPC argues that it meets the statutory requirements for a 100% exemption. We agree and reverse the district court's decision.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

FPC owns real property located at 950 W. State Street in Boise, Idaho. All real property in Idaho is subject to assessment and taxation unless otherwise exempted by state law. I.C. § 63-601. Idaho law provides certain exemptions from taxation, many of which must be approved annually by the board of county commissioners of the county where the real property is located. I.C. § 63-602(3). One such exemption applies to property belonging to religious entities. I.C. § 63-602B. Property owners seeking an exemption under section 63-602B must apply for the exemption each year and file the application with the county by April 15. I.C. § 63-602(3)(b).

On March 13, 2023, FPC filed a Property Tax Exemption Application and supporting documents with the Commissioners, seeking a 100% property tax exemption pursuant to Idaho Code section 63-602B. That section exempts from taxation any property belonging to a religious entity that is "used exclusively for and in connection with any combination of religious, educational, or recreational purposes or activities of such religious [entities]." I.C. § 63-602B(1). That statute also provides that, if a religious entity's property is leased in part, that the "part used or leased for . . . business or commercial purposes shall be taxed as any other property." I.C. § 63-602B(2). The statute provides that such property is not leased for a business or commercial purpose if the "use or lease of any property by any such religious limited liability company, corporation or society for athletic or recreational facilities, residence halls or dormitories, meeting rooms or halls, auditoriums, or club rooms [is] for and in connection with the purposes for which such religious [entity] is organized . . . ." *Id.*

FPC disclosed on its application that the YMCA uses a portion of FPC's real property to operate a daycare program. The Commissioners determined that this use constituted a lease for business or commercial purposes and that the percentage of the property used by the YMCA, 18%, was not entitled to a tax exemption. As a result, the Commissioners approved a partial, 82% tax exemption for FPC for 2023. During the fourteen years prior to 2023, the Commissioners granted FPC a 100% exemption for nine of the years and an 82% exemption for the other five years.

FPC appealed the Commissioners' decision to the BOE and provided evidence and briefing in support of its position. FPC argued that it was entitled to a 100% tax exemption despite the YMCA's use of a portion of the property because FPC did not lease its property to the YMCA for

business or commercial purposes. Instead, FPC had a "Shared Use Agreement" with the YMCA. FPC provided evidence to the BOE, including a copy of the Shared Use Agreement, to demonstrate that, under the agreement, the YMCA had exclusive use of the property Monday through Friday between the hours of 6:00 a.m. and 6:00 p.m. The Church retained use of the property the rest of the time.

FPC explained that, while the YMCA paid FPC $7,336 each month to use the property, the amount was intended to cover a portion of FPC's expenses for maintaining the property and was well-below market rent for property in downtown Boise. FPC argued that the shared use was not for a business or commercial purpose because the low rent meant that FPC was financially subsidizing the YMCA's daycare program. It argued no revenue was generated because the YMCA agreed to provide financial assistance on a sliding scale so that no child would be excluded from the program and FPC used the funds it received each month to cover its expenses for maintaining the space.

FPC contended that, even if the Shared Use Agreement was a lease for business or commercial purposes, it fell under the exemption in section 63-602B(2) for athletic or recreational facilities and meeting rooms or halls. FPC argued that the areas used by the YMCA included a playground, which was a recreational facility, and meeting rooms for staff to meet and children to engage in activities while their parents worked. It argued that partnering with the YMCA to provide daycare services furthered FPC's mission to partner with the community to provide services to support those living and working in the downtown Boise area. FPC also raised a new argument that it was entitled to a 100% charitable exemption under Idaho Code section 63-602C.

The BOE held a hearing on the appeal, at the conclusion of which it affirmed the 82% tax exemption by a vote of two to one. Those voting in favor of the 82% exemption concluded that the shared use with the YMCA prevented FPC from receiving a 100% religious entity exemption. The BOE did not expressly address FPC's claim that it was also entitled to a 100% charitable exemption.

FPC appealed to the district court, which affirmed the BOE's decision. The district court concluded that the religious entity exemption did not apply for two reasons. First, it interpreted section 63-602B to only exempt property used exclusively for the religious entity's purposes and activities. The district court reasoned that leasing property to the YMCA to operate a daycare was not a religious purpose or activity of FPC. Second, the district court concluded that, even if the

property was used for FPC's religious purposes, the Shared Use Agreement was a lease for business or commercial purposes and the daycare did not constitute "athletic or recreational facilities, residence halls or dormitories, meeting rooms or halls, auditoriums, or club rooms for an[d] in connection with the purposes for which [FPC] is organized." (Second alteration in original.) Lastly, the district court concluded that it would not consider FPC's charitable exemption argument because FPC did not include that exemption in its original application to the Commissioners.

FPC timely appealed to this Court.

## II.  STANDARD OF REVIEW

"When a district court acts in its appellate capacity, 'the reviewing court will not disturb the district court's factual findings if supported by substantial and competent evidence.' " *Upper Valley Cmty. Health Servs., Inc. v. Madison County ex rel. Madison Cnty. Bd. of Equalization*, 174 Idaho 513, ___, 554 P.3d 574, 580 (2024) (quoting *Corp. of Presiding Bishop of Church of Jesus-Christ of Latter-Day Saints v. Ada County*, 123 Idaho 410, 415, 849 P.2d 83, 88 (1993)). "However, this Court is not bound by the legal conclusions of the district court and is free to draw its own conclusion from the facts presented." *Id.* (citation omitted). "Interpretations of tax exemption requirements are questions of law over which this Court exercises free review." *Id.* (citing *Cmty. Action Agency, Inc. v. Bd. of Equalization of Nez Perce Cnty.*, 138 Idaho 82, 85, 57 P.3d 793, 796 (2002)).

## III.  ANALYSIS

FPC's primary argument on appeal is that it is entitled to a 100% tax exemption under section 63-602B. That code section first identifies the standard that must be met for a religious entity's property to be exempt from taxation, and then identifies additional standards for property that is leased to another or used by the entity for business or commercial purposes:

(1) The following property is exempt from taxation: property belonging to any religious limited liability company, corporation or society of this state, used exclusively for and in connection with any combination of religious, educational, or recreational purposes or activities of such religious limited liability company, corporation or society, including any and all residences used for or in furtherance of such purposes.

(2) If the entirety of any property belonging to any such religious limited liability company, corporation or society is leased by such owner, or if such religious limited liability company, corporation or society uses the entirety of such property for business or commercial purposes from which a revenue is derived, then the same

4

shall be assessed and taxed as any other property. <u>If any such property is leased in part or used in part by such religious limited liability company, corporation or society for such business or commercial purposes, the assessor shall determine the value of the entire exempt property, and the value of the part used or leased for such business or commercial purposes, and that part used or leased for such business or commercial purposes shall be taxed as any other property</u>. The Idaho state tax commission shall promulgate rules establishing a method of determining the value of the part used or leased for such business or commercial purposes. If the value of the part used or leased for such business or commercial purposes is determined to be three percent (3%) or less of the value of the entirety, the whole of said property shall remain exempt. If the value of the part used or leased for such business or commercial purposes is determined to be more than three percent (3%) of the value of the entirety, the assessor shall assess such proportionate part of such property, and shall assess the trade fixtures used in connection with the sale of all merchandise for such business or commercial purposes, <u>provided however, that the use or lease of any property by any such religious</u> limited liability company, <u>corporation</u> or society <u>for athletic or recreational facilities, residence halls or dormitories, meeting rooms or halls, auditoriums, or club rooms for and in connection with the purposes for which such religious</u> limited liability company, <u>corporation</u> or society <u>is organized, shall not be deemed a business or commercial purpose</u>, even though fees or charges be imposed and revenue derived therefrom.

I.C. § 63-602B(1), (2) (emphasis added).

We must first examine whether FPC has satisfied the requirements set forth in section 63-602B(1). If it does not, then it is not entitled to any tax exemption. If it does meet the requirements of subsection (1), then we must consider whether FPC's Shared Use Agreement with the YMCA constitutes a lease for business or commercial purposes. If it does not, then FPC is entitled to a 100% tax exemption. If the Shared Use Agreement does constitute a lease for business or commercial purposes, then the portion of the property used by the YMCA is subject to taxation. With this framework in mind, we turn to the merits of FPC's arguments.

**A. FPC meets the requirements for a tax exemption under Idaho Code section 63-602B(1).**

The district court concluded that FPC's property is not entitled to a full exemption under Idaho Code section 63-602B(1) because the exemption only applies to property used for the religious entity's purpose or activities, and that leasing to another organization for a daycare program is not a religious purpose of FPC. The district court also concluded that providing daycare to working parents in downtown Boise, including those who cannot afford to pay, does not fulfill a religious purpose of FPC because the YMCA operated the daycare as a non-religious, for-profit daycare.

5

FPC argues that the district court erred in concluding that the daycare was not a "sufficiently religious" purpose or activity of FPC and in failing to consider whether the daycare was "any combination of religious, educational, or recreational purposes or activities" of FPC. FPC argues that leasing the property to the YMCA to operate a daycare for downtown working parents, including those who could not afford to pay, aligned with FPC's mission goals and outreach to the downtown community and children. BOE responds that neither leasing property to the YMCA nor operating a daycare constitute a use, purpose or activity of FPC as required by section 63-602B(1).

Tax exemptions are generally disfavored because they could appear to conflict with principles of fairness, namely equality and uniformity, in bearing the burdens of government. *Jayo Dev., Inc. v. Ada Cnty. Bd. of Equalization*, 158 Idaho 148, 151, 345 P.3d 207, 210 (2015) (quoting *Ada Cnty. Bd. of Equalization v. Highlands, Inc.*, 141 Idaho 202, 206, 108 P.3d 349, 353 (2005)). As a result, statutes granting tax exemptions are strictly construed against the taxpayer and in favor of the State. *Evangelical Lutheran Good Samaritan Soc'y v. Bd. of Equalization of Ada Cnty.*, 161 Idaho 378, 380, 386 P.3d 901, 903 (2016) (citation omitted).

When interpreting a tax exemption statute we begin with its language. *Upper Valley Cmty. Health Servs., Inc. v. Madison Cnty. ex rel. Madison Cnty. Bd. of Equalization*, 174 Idaho 513, ___, 554 P.3d 574, 582 (2024). "Words are given 'their plain, usual, and ordinary meanings.' " *Id.* (quoting *Ada Cnty. Bd. of Equalization v. J.R. Simplot Found., Inc.*, 163 Idaho 75, 80, 408 P.3d 73, 78 (2017)). If the statutory language is unambiguous, we do not go beyond the statutory language to determine the applicability of the exemption. *Id.* "[T]he taxpayer bears the burden of clearly establishing the right to an exemption." *Id.* at ___, 554 P.3d at 581–82.

To be entitled to an exemption under section 63-602B(1), FPC must demonstrate that it is a "religious entity" and that its property is "used exclusively for and in connection with any combination of religious, educational, or recreational purposes or activities" of FPC. BOE does not dispute that FPC is a religious entity. Rather, the parties dispute whether FPC's Shared Use Agreement with the YMCA to operate a daycare is a use "exclusively for and in connection with any combination of religious, educational or recreational purposes or activities" of FPC. We hold that it is and that FPC has therefore met the requirements of section 63-602B(1).

FPC asserts that leasing property to the YMCA to operate a daycare that serves downtown working parents and their children, including those who cannot afford to pay for the program,

6

serves a religious purpose of FPC, namely its stated mission outreach to the downtown community. We conclude that the evidence submitted by FPC substantiates that its mission outreach work is one of FPC's religious purposes.

FPC's mission statement indicates that its religious purposes include the performance of mission outreach to the community:

> First Presbyterian Church is an inclusive community in downtown Boise expressing God's love, being disciples, and feeding God's children around the corner and around the world.
>
> We do this by[:]
>
> - Worshiping with authentic praise and prayer and with room for doubts and brokenness.
>
> - Providing community where we care for one another, grow in faith, and equip leaders.
>
> - Going out to our neighbors to learn, feed, house, and partner together in global community.

FPC's Shared Use Agreement with the YMCA describes the YMCA daycare and how it furthers FPC's mission outreach work:

> The parties stipulate and recite that:
>
> . . . .
>
> C.  The YMCA's shared use of the [FPC] premises serves the YMCA's purpose and mission of nurturing the development of children by providing a safe place to learn foundational skills, develop trusting relationships and build self-reliance through the YMCA's values of Caring, Honesty, Respect and Responsibility.
>
> D.  The YMCA provides such programs at or below its cost and endeavors to assure that no child is denied these services for inability to pay.
>
> E.  These values and charitable tenets are common to and consistent with the [FPC]'s charitable purpose, values and tenets and its goals of utilizing its assets and capitalizing on its downtown urban setting and making meaningful and visible its outreach to the community, and as a result the [FPC] is prepared to authorize the shared use of its property for these common and shared purposes and goals . . . .

The president of FPC's board of trustees wrote a letter to the Commissioners concerning FPC's exemption application and stated that the daycare was a joint service venture that provided reduced cost childcare to over 30% of participating families.

David Duro, president and CEO of the Treasure Valley YMCA, wrote a letter to the BOE in support of FPC's appeal. Duro indicated that the YMCA's partnership with FPC ensured that

working parents and parents attending school had a quality and affordable place to send their children for education, nourishment, and recreation and that no person or family was turned away due to inability to pay. Duro noted that over $68,000 in financial assistance would be provided to families at the FPC site that year and that, while the YMCA shared the expense of the space, the YMCA would be unable to operate the daycare program if it had to pay a market rate lease.

FPC's pastor, Dr. Andrew Kukla, wrote a letter to the BOE in support of FPC's appeal and explained how the YMCA daycare fit within FPC's mission outreach work:

> The Presbyterian Church (USA), the denomination to which First Presbyterian Church belongs, has historic principles of partnering in the education and nurture (sic) of children. We find ourselves, in the 21st century, as religious institutions, needing to ensure our buildings are resources for our larger community that create social good and build up the fabric of our society rather than remaining empty most of the week. We steward this building for everyone, not just ourselves. Since 2015 we've altered our mission statement to include such partnering, and in 2019 we renovated access to our building to better host outside community groups. In other words, it has become a priority of our congregation to use this building as a mission resource in and to downtown Boise.
>
> In 1982 the YMCA and First Presbyterian Church began its partnership with a "latch-key kid" program. That is the root of the current partnership, whose purpose is to ensure that working parents have a quality and affordable place to send their children for education, nourishment, and recreation while they are at work. We consider this a mission partnership to serve our larger community.

This evidence establishes that FPC's religious purposes and beliefs are embodied, in part, in its mission outreach work in downtown Boise. Partnering with the YMCA to provide daycare facilities to working parents, including those who cannot afford daycare, is part of FPC's mission outreach work and thus is undertaken in connection with FPC's religious purposes. Section 63-602B(1) does not require that FPC operate the daycare to qualify for the exemption. Rather, it only requires that FPC use its property exclusively for and in connection with FPC's religious purposes or activities. The evidence establishes that FPC meets these requirements. Therefore, we hold that FPC has demonstrated that it meets the statutory requirements for a tax exemption.

In affirming the BOE, the district court erred by taking what appears to be an unduly narrow view of the term "religious purposes." The district court concluded that FPC's religious purposes were not furthered by leasing a portion of its property to the YMCA to operate a daycare. The district court appears to have considered FPC's mission statement and the other supporting documents as evidence of FPC's charitable purposes, not its religious purposes. In doing so, the district court failed to consider the evidence in the record indicating that FPC fulfills its religious

purposes by performing outreach work to support the local downtown Boise community. FPC's mission statement and the other evidence in the record demonstrates that FPC performs mission outreach work, such as partnering with the YMCA to provide daycare to local parents, to "express[] God's love, be[] disciples, and feed[] God's children around the corner and around the world." That FPC did not require recipients of its mission outreach to submit to proselytizing does not obviate the religious purposes underlying its outreach.

We are unpersuaded by BOE's arguments that FPC failed to demonstrate it used its property exclusively for and in connection with its religious purposes. BOE argues that the Idaho Board of Tax Appeals ("IBTA") already decided this issue adverse to FPC in 2011 and that we should follow that decision as persuasive authority. This Court is not bound by decisions of the IBTA and freely reviews questions of state law concerning tax exemption requirements. *See Cmty. Action Agency, Inc.*, 138 Idaho at 85, 57 P.3d at 796. Our decision is based on the plain language of section 63-602B and we will not defer to the IBTA on the interpretation of state law. *See* I.C. § 67-5279(5).

BOE next contends that FPC failed to meet the requirements of section 63-602B(1) because leasing property and running a daycare are not stated purposes in FPC's bylaws, articles of incorporation, or mission statement. Again, BOE's arguments ignore the plain language of the statute. Section 63-602B(1) does not automatically disallow a leased property from qualifying for the tax exemption. Instead, the exemption turns on whether FPC uses the property exclusively for and in connection with any combination of its religious, educational, or recreational purposes or activities. As previously explained, FPC presented evidence meeting this standard. BOE's narrow focus on leasing the property and running a daycare fails to consider FPC's stated religious purpose for leasing a portion of the property to the YMCA and thus ignores the plain language of the statute.

Finally, BOE argues that, if we accept FPC's interpretation of section 63-602B(1), it will render the statutory requirements meaningless because it will allow a religious entity to lease its property to any entity and still claim the tax exemption if the renter has a purpose aligned with the religious entity. But our interpretation simply applies the plain language of the statute. If BOE has concerns about the wisdom, justice, policy or expediency of the statute, then it needs to raise those concerns with the legislature. We are not free to disregard the plain language of a statute because BOE is concerned about the policy repercussions of doing so. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 895-96, 265 P.3d 502, 508-09 (2011).

9

In sum, we hold that FPC has demonstrated that it meets the requirements of section 63-602B(1) and is entitled to a tax exemption. We now turn to whether FPC's Shared Use Agreement with the YMCA constitutes a lease for business or commercial purposes under section 63-602B(2), which would render that portion of the property subject to taxation.

**B.  FPC's Shared Use Agreement is a lease subject to section 63-602B(2), but the property is exempt from taxation because it is used for recreational facilities and meeting rooms in connection with the purposes for which FPC is organized.**

The district court concluded that, even if FPC's property was used by the YMCA for religious purposes, it was still subject to taxation under section 63-602B(2) because FPC leased the property to the YMCA for business or commercial purposes. FPC first argues that the district court erred because the parties have a "Shared Use Agreement," not a lease for business or commercial purposes. FPC maintains that the Shared Use Agreement is not a lease because it does not charge fair market rent and the YMCA uses the space less than 50% of the time and does not have exclusive use of the space. BOE responds that the Shared Use Agreement is a lease because FPC receives monthly payments from the YMCA in exchange for its exclusive use of the property Monday through Friday from 6:00 a.m. to 6:00 p.m.

We must first determine whether the YMCA's shared use of FPC's property constitutes a lease for business or commercial purposes under section 63-602B(2). The relevant language of the statute describes a lease for business or commercial use as follows:

> If the entirety of any property belonging to any such religious limited liability company, corporation or society is leased by such owner, or if such religious limited liability company, corporation or society uses the entirety of such property for business or commercial purposes from which a revenue is derived, then the same shall be assessed and taxed as any other property. If any such property is leased in part or used in part by such religious limited liability company, corporation or society for such business or commercial purposes, the assessor shall determine the value of the entire exempt property, and the value of the part used or leased for such business or commercial purposes, and that part used or leased for such business or commercial purposes shall be taxed as any other property. The Idaho state tax commission shall promulgate rules establishing a method of determining the value of the part used or leased for such business or commercial purposes. If the value of the part used or leased for such business or commercial purposes is determined to be three percent (3%) or less of the value of the entirety, the whole of said property shall remain exempt. If the value of the part used or leased for such business or commercial purposes is determined to be more than three percent (3%) of the value of the entirety, the assessor shall assess such proportionate part of such property, and shall assess the trade fixtures used in connection with the sale of all merchandise for such business or commercial purposes, provided however, that the

10

use or lease of any property by any such religious limited liability company, corporation or society for athletic or recreational facilities, residence halls or dormitories, meeting rooms or halls, auditoriums, or club rooms for and in connection with the purposes for which such religious limited liability company, corporation or society is organized, shall not be deemed a business or commercial purpose, even though fees or charges be imposed and revenue derived therefrom.

I.C. § 63-602B(2) (emphasis added). Subsection (2) addresses situations where property that is otherwise exempt is leased to another or used by the religious entity for business or commercial purposes from which a revenue is derived. In this situation, the property is subject to taxation.

We hold that FPC's Shared Use Agreement with the YMCA constitutes a lease. Caselaw and secondary sources uniformly define a lease as a contract where rent is paid in exchange for possession of a property. *Krasselt v. Koester*, 99 Idaho 124, 125, 578 P.2d 240, 241 (1978); *Herndon v. City of Sandpoint*, 172 Idaho 228, 242, 531 P.3d 1125, 1139 (2023); *Lease*, Black's Law Dictionary (12th ed. 2024). The record demonstrates that the YMCA paid FPC $7,336 per month in exchange for use of the shared space Monday through Friday from 6:00 a.m. to 6:00 p.m. This arrangement meets the definition of a lease.

We are not persuaded by FPC's arguments that the Shared Use Agreement is not a lease because the YMCA does not have sole, exclusive use of the property and because FPC does not charge "rent" but instead only a "reimbursement" for expenses associated with the property. None of the above-cited definitions of "lease" require that the lessee have sole, exclusive use of the property or that the landlord must derive a profit from the monthly amount paid. The Shared Use Agreement meets the definition of a lease and is therefore subject to section 63-602B(2).

Pursuant to that subsection, the portion of FPC's property leased to the YMCA is subject to taxation if the property is leased for a business or commercial purpose from which revenue is derived. FPC makes several arguments for why the lease does not satisfy these requirements. We need not recite them all here because we are persuaded by its argument that the lease falls under the last clause of section 63-602B(2). That section provides that FPC's lease will not be deemed "for a business or commercial purpose" if the leased property is used for recreational facilities or meeting rooms in connection with the purposes for which FPC is organized. The evidence in the record establishes that the Shared Use Agreement meets these requirements, and the leased portion is therefore exempt from taxation.

FPC's Shared Use Agreement identifies the following church areas that are leased to the YMCA: a basement with two storage closets, eight classrooms, a kitchenette/breakroom, a laundry

11

room, two child-only restrooms, and two small office spaces. The record reveals that these rooms are all used by students, teachers, and staff for the purpose of running a daycare. The leased area largely constitutes "athletic or recreational facilities" or "meeting rooms or halls." While the lease also includes use of storage closets, a kitchenette/breakroom, a laundry room and two small office spaces, the record reveals that those spaces are ancillary to the classrooms, which are the main spaces leased. These rooms are also used as recreational facilities or meeting rooms for the children served by the daycare. Section 63-602B(2) also requires that the lease of the property must be "for and in connection with the purposes for which [FPC] is organized." As discussed above, FPC's leasing of a portion of its property to the YMCA to run a daycare is a use in connection with the religious purposes for which FPC is organized, namely its mission outreach to the downtown Boise community. The evidence therefore establishes that, for purposes of section 63-602B(2), FPC's lease to the YMCA is not considered a lease for a business or commercial purpose from which revenue is derived, and the leased property is therefore exempt from taxation.

For the reasons described above, we hold that FPC is entitled to a 100% tax exemption. In light of this holding, we do not consider FPC's argument that it is also entitled to a full tax exemption pursuant to Idaho Code section 63-602C as a charitable organization.

## IV.    CONCLUSION

For the foregoing reasons, the decision of the district court is reversed. As the prevailing party on appeal, FPC is awarded its costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.